UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Sun Property Consultants, Inc.,

                Debtor.
------------------------------------------------------------x
Raj & Raj Realty, Ltd.,

                Plaintiff,

      v.

Difficile Realty Corp.,

                Defendant.
------------------------------------------------------------x

Case No.: 8-16-72267-las

Chapter 7


Adv. Pro. No.: 8-19-08064-las

## MEMORANDUM DECISION AND ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Before the Court is defendant's motion pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure ("Fed. R. Civ. P."), as made applicable to this adversary proceeding by

Bankruptcy Rule 7012, to dismiss plaintiff's amended complaint ("Amended Complaint")[1] for

failure to state a claim for relief. [Dkt. No. 41]. Plaintiff opposed the motion [Dkt. No. 46],

and defendant filed a reply [Dkt. No. 48]. The Court has carefully considered the arguments

and submissions of the parties in connection with the motion to dismiss. For the following

reasons, the Court grants defendant's motion and dismisses the Amended Complaint in its

entirety.

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b), 28 U.S.C. §

157(a), and the Standing Order of Reference entered by the United States District Court for

---

[1] This action was removed from the Supreme Court of the State of New York, County of Nassau ("State Court") to
this Court by defendant on May 10, 2019. [Dkt. No. 1].

the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2012.

BACKGROUND[2]

A.    The Bankruptcy Case of Sun Property Consultants, Inc.

On May 23, 2016, Sun Property Consultants, Inc. ("Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code. At the time of the bankruptcy filing, the Debtor owned and operated a strip shopping center located at the intersection of 4019-4021 Hempstead Turnpike, Bethpage, New York 11714 and 150-166 Hicksville Road, Bethpage, New York 11714 (the "Property"). In Schedule G (Executory Contracts and Unexpired Leases) to its chapter 11 petition, the Debtor disclosed that, as landlord, it was party to five unexpired leases with the following tenants: Brothers Three Inc., Northshore Community Services, Inc., W.B. Restaurant Inc., Watawa Japanese Cuisine Inc., and Xu Lei. [Bankr. Case No. 16-72267, Dkt. No. 28][3]. Vacant tenant space at the Property, formerly occupied by a restaurant known as Singletons under an alleged lease between the Debtor and the plaintiff Raj & Raj Realty, Ltd. ("Raj & Raj" or "plaintiff"), was the subject of concerted effort by the Debtor and, subsequently, Yann Geron, Esq., the chapter 11 trustee appointed in the Debtor's chapter 11 case, to find a new tenant. Neither Raj & Raj nor Singletons is listed in Debtor's Schedule G as a party to an existing lease for tenant space at the Property. Raj & Raj is listed as a general

---

[2] In this section, the Court first recounts the procedural history of the bankruptcy case commenced by Sun Property Consultants, Inc. as necessary to familiarize the reader with defendant's acquisition of the property at issue pursuant to a bankruptcy sale approved by the Court. Next, the Court relates the facts as alleged by plaintiff. The facts stated are taken from plaintiff's Amended Complaint ("Am. Compl.") [Dkt. No. 39], unless otherwise noted, and are accepted as true for purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). References to the allegations in the Amended Complaint should not be construed as a finding of fact by the Court, and the Court makes no such findings.

[3] Unless otherwise stated, all docket references to the Debtor's bankruptcy case, Case No. 8-16-72267-las, are cited as "[Bankr. Dkt. No. __]".

2

unsecured creditor in the Debtor's amended Schedules E/F (Creditors Who Have Unsecured Claims) with a disputed claim in an unknown amount with no description given as to the basis for Raj & Raj's claim. [Bankr. Dkt. No. 20]. Raj & Raj is scheduled as having a mailing address of 127 Reeve Road, Rockville Centre, NY 11570 ("Rockville Centre Address"). The Rockville Centre Address is listed in the Debtor's chapter 11 petition as the Debtor's mailing address even though its business address and the Property address are listed as 150 Hicksville Road, Bethpage, NY 11714. [Bankr. Dkt. No. 1]. The Rockville Centre Address is also the address of the Debtor's sole shareholder, Dr. Rajesh K. Singh ("Rajesh"), and his wife Rajeswary Singh ("Rajeswary"). Rajesh and Rajeswary are the parents of Harendra Singh ("Harendra") who operated Singletons. Singletons closed in December 2015 and Bethpage Bistro & Catering, LLC ("Bethpage Bistro") was formed in January 2016 to operate in the tenant space formerly occupied by Singletons. Oct. 5, 2017 Hearing Transcript ("Hr'g Tr.") 51:23-25. [Bankr. Dkt. No. 219].

By motion dated August 23, 2017, the Debtor sought an order authorizing it to enter into a lease agreement with Bethpage Bistro for the tenant space previously occupied by Raj & Raj ("Lease Approval Motion"). [Bankr. Dkt. No. 183]. The Debtor did not move to assume and assign to Bethpage Bistro any existing unexpired lease with Raj & Raj, nor did the Debtor move to reject any existing unexpired lease with Raj & Raj. That it did not undertake either assumption and assignment or rejection is consistent with Schedule G where, as noted above, the Debtor did not state that it is a party to an unexpired lease with Raj & Raj, nor did it list Raj & Raj as a tenant at the Property.

Prior to filing the Lease Approval Motion, during the months of February 2017 to June 2017, the Debtor made several payments to Bethpage Bistro claiming that Bethpage Bistro had arrangements with third parties, including vendors, to provide services, such as garbage removal, extermination, and snow removal, for the Property even though Bethpage Bistro

was not a tenant at the time. [Bankr. Dkt. No. 201]. No authority was sought by the Debtor from this Court to make any post-petition payments to Bethpage Bistro for such services. The Lease Approval Motion was withdrawn at a hearing before the Court on January 25, 2018.

Mr. Geron filed a motion to convert the chapter 11 case to a chapter 7 case on August 30, 2018 ("Conversion Motion"). [Bankr. Dkt. No. 301]. The only party to object to conversion of the case was Atalaya Asset Income Fund II LP. [Bankr. Dkt. No. 308]. The Court granted the Conversion Motion after a hearing and the chapter 11 case was converted to a chapter 7 case on October 3, 2018 ("Conversion Date"), [Bankr. Dkt. No. 313], and Mr. Geron was appointed chapter 7 trustee ("Trustee") [Bankr. Dkt. No. 315].

The Trustee filed an application on October 16, 2018 seeking an order (i) approving proposed bidding procedures and terms and conditions of sale of the Property, (ii) scheduling an auction date in connection with the sale, (iii) authorizing the sale of the Property to the highest or best bidder at auction, "as is" and "where is", free and clear of all liens, claims, encumbrances, including any purported easements, and (iv) approving the form of sale agreement to be executed by the Trustee and the successful purchaser (the "Sale Motion"). [Bankr. Dkt. No. 326]. The Sale Motion was served on the Debtor's creditors, and on Raj & Raj, Rajesh, and Rajeswary at the Rockville Centre Address, and on Harendra in care of his counsel who previously filed a notice of appearance in the bankruptcy case. [Bankr. Dkt. No. 330]. No opposition to the Sale Motion was filed and the Court entered an order granting the Sale Motion on November 7, 2018. [Bankr. Dkt. No. 332]. The Trustee conducted the auction sale on November 29, 2018 and after a hearing before the Court on November 30, 2018, the Court entered an order approving the sale of the Property to Valentine Mark Corporation ("VMC") or its assignee ("VMC Sale Order"). [Bankr. Dkt. No. 348]. VMC's assignee, 4021 Hempstead Turnpike, LLC ("4021 HTL"), failed to close on the sale. [Bankr. Dkt. No. 351]. Thereafter, a dispute arose between the Trustee and 4021 HTL as to the disposition of the

$620,000 earnest money deposit which was subsequently resolved with the Debtor's estate retaining $420,000 and the balance being released to 4021 HTL.

By Order dated February 1, 2019, the Court approved the sale of the Property to the back-up bidder, REMM Consultants, Inc. ("REMM"), or to REMM's designee ("REMM Sale Order", and together with the VMC Sale Order, the "Sale Orders"). [Bankr. Dkt. No. 373]. The sale of the Property, pursuant to 11 U.S.C. § 363,[4] was in 'as is' and 'where is' condition and free and clear of all liens, claims and encumbrances, including any purported easements, other than "Permitted Exceptions" defined in the sale agreement, with any such liens, claims and encumbrances, including any purported easements, to attach to the sale proceeds.

The Trustee and REMM executed a Purchase and Sale Agreement ("Sale Agreement") for the Property which had attached to it a Rider that defined the "property" sold as including not just the land and buildings, improvements, and structures located on the land, but also "the fixtures, equipment and other personal property attached or appurtenant to the [i]mprovements, to the extent the same belong to the [s]eller." On February 5, 2019, the Trustee conveyed the bankruptcy estate's right, title, and interest in and to the property identified in the Sale Agreement (including the Property) to defendant Difficile Realty Corp. ("Difficile" or "defendant"), as REMM's designee, pursuant to a Bargain and Sale Deed without Covenants.

In the interim, the Trustee entered into separate stipulations with Rajesh, Rajeswary, Harendra and his wife, Ruby Singh ("Ruby"), Raj & Raj, Singh Hospitality Group, and SRB Convention & Catering Corp. (collectively, the "Singh Entities") to toll and extend the time for the Trustee to commence any and all actions against each of the Singh Entities through and including February 13, 2019. [Bankr. Dkt. Nos. 335, 336, 337, 338, 340, 341, 342].

---

[4] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)".

Harendra signed his stipulation on October 15, 2018 [Bankr. Dkt. No. 335] and signed the stipulation on behalf of Raj & Raj, as owner, on November 8, 2018 [Bankr. Dkt. No. 340]. The tolling stipulations were approved by the Court on November 7 and 8, 2018.

  B.  The Adversary Proceeding

    1.  Overview

  Raj & Raj commenced this action on April 12, 2019 by filing its original complaint in State Court ("State Court Action") against Difficile asserting that Difficile's possession of the Property was subject to Raj & Raj's tenancy pursuant to an alleged lease agreement between Raj & Raj and the Debtor, and that Difficile breached that lease when it placed locks on the Property and denied Raj & Raj access to the Property. Raj & Raj also sought money damages for the amount it allegedly spent for capital improvements to the Property and for an alleged unlawful eviction. Raj & Raj was represented in the State Court Action by Berger, Fischoff, Shumer, Wexler & Goodman LLP ("Berger Fischoff"). Difficile removed the State Court Action to the United States District Court for the Eastern District of New York on April 23, 2019 and the District Court referred the action to this Court on May 10, 2019.

  On June 25, 2019, Berger Fischoff filed a motion to withdraw as Raj & Raj's counsel ("Withdrawal Motion") [Dkt. No. 9], and Difficile filed a motion, pursuant to Bankruptcy Rule 9011, Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, seeking sanctions against Raj & Raj, Harendra and Berger Fischoff for filing the State Court Action[5] [Dkt. No. 10]. On June 28, 2019, Difficile filed a motion to dismiss the complaint. [Dkt. No. 13]. On July 22, 2019, Harendra, on behalf of Raj & Raj, filed opposition to the Withdrawal Motion and requested an accounting of the services rendered by Berger Fischoff and a refund of a portion of the retainer. [Dkt. No. 15]. On July 24, 2019, the Court (i) granted Berger Fischoff's request to withdraw as counsel and

---

[5] Difficile subsequently withdrew the sanctions motion.

provided Raj & Raj an opportunity to retain substitute counsel [Dkt. No. 16], and (ii) entered a scheduling order with respect to Difficile's motion to dismiss [Dkt. No. 17].

On August 14, 2019, William M. Gearty, Esq. filed a Notice of Appearance on behalf of Raj & Raj in this adversary proceeding. [Dkt. No. 24]. After a hearing on August 15, 2019, the Court entered an amended scheduling order allowing Raj & Raj additional time to either move to amend its pleading or file opposition to Difficile's motion to dismiss. [Dkt. No. 26]. On August 30, 2019, Raj & Raj filed a motion, pursuant to Fed. R. Civ. P. 15(a)(2),[6] seeking leave to file an amended complaint ("Motion for Leave to Amend"). [Dkt. No. 30]. Difficile filed opposition to the Motion for Leave to Amend [Dkt. No. 34], and Raj & Raj filed a reply [Dkt. No. 36]. After a hearing on October 1, 2019, the Court enlarged Raj & Raj's time pursuant to Bankruptcy Rule 9006(b)(1) to file an amended complaint and dismissed the Motion for Leave to Amend as moot. [Dkt. No. 40]. Shortly thereafter, Raj & Raj filed the Amended Complaint which is now the operative complaint in this adversary proceeding. [Dkt. No. 39]. The original complaint was not amended to provide further detailed factual allegations. Rather, the Amended Complaint asserts new claims all based on the same factual allegations regarding the sale of the Property set forth in the original complaint. The four-count Amended Complaint seeks to overturn the bankruptcy sale of the Property to Difficile, requests an accounting of personal property allegedly owned by Raj & Raj and which it claims was at the Property at the time of the sale, and seeks money damages against Difficile for unjust enrichment and conversion arising out of its allegedly unlawful possession of, and dominion and control over, the personal property.

---

[6] Fed. R. Civ. P. 15 is made applicable to this adversary proceeding by Bankruptcy Rule 7015.

2.    The Allegations in the Amended Complaint

In the opening paragraph of the Amended Complaint, Raj & Raj states that that the allegations are made "upon information and belief." The factual allegations are set forth in paragraphs 14 through 32 of the Amended Complaint under the heading "Facts Common to All Counts" and the introductory language immediately preceding paragraph 14 states that "the following facts which [Raj & Raj] asserts are true based on its knowledge or upon information and belief." The Amended Complaint, however, does not tell us which facts are alleged upon information and belief, and presumably leaves it to the Court to find specific facts to support allegations that are premised on information and belief and to decipher which allegations are "true" based on Raj & Raj's knowledge. The Amended Complaint offers little to support pleading facts upon information and belief or a basis for this Court to relax the requirement of when it is appropriate to plead facts upon information and belief. Pleading facts upon information and belief is permitted "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018).

With this legal principle in mind, the Court turns to the factual allegations set forth in the Amended Complaint which allegations, according to Raj & Raj, plausibly support the inference of wrongdoing on the part of Difficile.

The Debtor filed for relief under chapter 11 on May 23, 2016 as a SARE chapter 11 case involving a single piece of real property, i.e. the Property, located at 150-166 Hicksville Road, Bethpage, New York. Am. Compl. ¶ 14. On June 14, 2016, the Debtor filed an amended Schedule F in its chapter 11 case listing Raj & Raj as a creditor. Am. Compl. ¶ 15. On October 27, 1988, a Memorandum of Lease for the Property dated October 20, 1988 between the

Debtor, as landlord, and Raj & Raj, as tenant, was filed with the County Clerk, Nassau County ("1988 Memorandum of Lease"). Am. Compl. ¶16. The lease term was 20 years commencing January 2, 1988 and terminating on January 1, 2008. *Id*. A copy of the 1988 Memorandum of Lease is not attached as an exhibit to the Amended Complaint, nor is there any description in the Amended Complaint of its provisions or of the purported lease other than a start date and an end date. On February 2, 1999, a Memorandum of Lease for the Property dated December 15, 1998 between the Debtor and Raj & Raj was filed with the County Clerk, Nassau County ("1998 Memorandum of Lease"). Am. Compl. ¶ 17. The lease term was 31 years commencing February 1, 1988 and terminating on January 31, 2019. *Id*. A copy of the 1998 Memorandum of Lease is not attached as an exhibit to the Amended Complaint, nor does the Amended Complaint tell us anything about the purported lease other than that its term was extended by eleven years. On February 10, 2011, the Debtor and Raj & Raj entered into a Rider which allegedly extended the term of the lease for an additional 20 years commencing February 1, 2019 and terminating January 31, 2039, with an option to renew the lease for an additional ten years (the "Lease Rider"). Am. Compl. ¶ 18. A copy of the Lease Rider is not attached as an exhibit to the Amended Complaint, nor is there a description in the Amended Complaint of its provisions other than an additional extension of the term of the purported lease to January 2039 with a ten-year option to renew. Notably absent from the Amended Complaint is any allegation that the Lease Rider was recorded.

According to the Amended Complaint, Ruby is listed with the New York Secretary of State as the owner of record of Raj & Raj, and 150 Hicksville Road, Bethpage, New York ("Hicksville Address") is listed as the address for service on Raj & Raj, yet documents filed in

the bankruptcy case, including the amended schedule E/F and the Conversion Motion, were served on Raj & Raj at the Rockville Centre Address. Am. Compl. ¶¶ 19, 22, 25.[7]

On October 16, 2018, the Trustee filed the Sale Motion. Am. Compl. ¶ 24. There is no allegation in the Amended Complaint that Raj & Raj did not receive notice of the Sale Motion filed by the Trustee which, among other things, sets forth the proposed bidding procedures and the terms and conditions under which the Trustee sought to sell property of the Debtor's bankruptcy estate, including the Property.

The Sale Motion was approved by the Court and an order was entered on November 7, 2018 approving the bidding procedures and certain terms and conditions of the sale. Am. Compl. ¶ 26. By order stated on the record on November 29, 2019 (sic) the Court authorized the sale of the Property. Am. Compl. ¶ 27. The order authorizing the sale of the Property for $5,350,000 [to the original buyer at the auction] was entered on November 30, 2018. *Id*. On January 31, 2019, the attorney for "a potential purchaser" confirmed with the Trustee the existence of "a substantial amount of restaurant furniture, fixtures and equipment, and inventory at the [P]roperty" and that "[n]either the Trustee nor the estate expressed an interest in acquiring title to or possession of the personal property." Am. Compl. ¶ 28. No document is attached as an exhibit to, or referenced in, the Amended Complaint concerning this confirmation by counsel for the purchaser, i.e. VCM, the successful bidder at the auction sale. Additionally, the Amended Complaint does not mention that the Court docket reflects that Harvey Cavayero, Esq., the attorney for the purchaser VCM and its assignee, 4021 HTL,

---

[7] The Court observes that paragraphs 22 and 25 of the Amended Complaint are identical and allege that the Conversion Motion was served on Raj & Raj at the Rockville Centre Address which, as noted earlier, was the address listed by the Debtor in its bankruptcy schedules for Raj & Raj. It bears noting, and as discussed further below, Raj & Raj never appeared in the bankruptcy case nor did it at any time assert any rights with respect to an unexpired lease between it and the Debtor for space at the Property. Additionally, Raj & Raj did not file a proof of claim in the Debtor's bankruptcy case.

represented Bethpage Bistro in its efforts to sign a lease with the Debtor, and represented Rajeswary in the Debtor's bankruptcy case and Ruby in her chapter 7 bankruptcy case.

Raj & Raj also asserts that shortly before the Debtor filed its chapter 11 case, "Spencer Appraisal Associates prepared an [a]ppraisal [r]eport covering the value of the items then located at the [Property]." Am. Compl. ¶ 29. Raj & Raj does not state the present value of the personal property and the Amended Complaint has the value stated in blank. Am. Compl. ¶ 30 ("The present value of the property is ____."). A copy of the alleged appraisal report is not attached as an exhibit to the Amended Complaint nor is there any further explication of the appraisal report other than the single sentence contained in paragraph 29.

Turning now to the four counts asserted by Raj & Raj, the Court notes that each count is based on the same factual allegations set forth in paragraphs 14 through 32 of the Amended Complaint, *see* Am. Compl. ¶¶ 35, 41, 51, and 57, and is replete with conclusory statements.

Count One of the Amended Complaint seeks to set aside the Sale Orders seemingly for lack of notice. It contains six paragraphs, only two of which resemble a factual allegation regarding notice. Raj & Raj asserts that § 363(b)(1) provides that the trustee after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate. Am. Compl. ¶ 36. Raj & Raj also asserts that Bankruptcy Rule 2002(a)(2) provides that the clerk, or some other person as the court may direct, give the debtor, trustee, all creditors and indenture trustees at least 21 days' notice by mail of a proposed use, sale, or lease of property of the estate. Am. Compl. ¶ 37. Raj & Raj claims that it did not receive *notice of the bankruptcy case* before the Sale Orders were entered. Am. Compl. ¶ 38 (emphasis added). Raj & Raj contends that failure to provide the notice required by that rule is ground for setting aside a bankruptcy sale or to treat it as avoidable. Am. Compl. ¶ 39. Raj & Raj alleges that it can elect to set aside the sale as a person who failed to receive notice. Am. Compl. ¶ 40. Notably absent from this claim for relief is any allegation that Raj & Raj did not

receive notice of either the Sale Motion or the Sale Orders. And, as noted above, the factual allegations set forth in paragraphs 14 through 32 do not contain any allegation that Raj & Raj did not receive notice of the sale or entry of the Sale Orders. The lone statement that Raj & Raj did not receive notice of the "bankruptcy sale" is set forth in conclusory fashion in (i) paragraph 5 under the heading "Jurisdiction and Venue" as the basis asserted by Raj & Raj for this Court's exercise of subject matter jurisdiction and (ii) paragraph 11 under the heading titled "Nature of the Proceeding" where Raj & Raj states that this adversary proceeding seeks to have the Sale Orders "overturned" pursuant to Fed. R. Civ. P. 60(b)(6). The Amended Complaint does not contain any factual allegation suggesting that it was the responsibility of Difficile, as back-up bidder at the auction, to provide notice of the sale of the Property.

Raj & Raj asserts in its second count that it is entitled to an accounting of the personal property belonging to it and which is located at the Property. Am. Compl. ¶ 50. Other than a conclusory allegation that the personal property belongs to it, there are no factual allegations of ownership of any specific property, nor are there documents attached to or referenced in the Amended Complaint that support a claim that the personal property is owned by Raj & Raj. This count reiterates that on January 31, 2019, the attorney for a potential purchaser confirmed with the Trustee that there was a substantial amount of restaurant furniture, fixtures and equipment, and inventory at the Property but now alleges that the personal property belongs to Raj & Raj and that neither the Trustee nor the estate expressed an interest in inquiring title or possession of the personal property. Am. Compl. ¶ 42. Raj & Raj again asserts that the personal property allegedly owned by it had value as itemized by Spencer Appraisal Associates.[8] Am. Compl. ¶ 43. Raj & Raj claims that the personal property

---

[8] This allegation, like the allegations contained in paragraphs 29 and 30 of the Amended Complaint, contains a general allegation as to the existence of the purported appraisal report, and likewise does not place a value on the personal property. As noted earlier, the purported appraisal report is not attached as an exhibit to the Amended Complaint. However, Raj & Raj previously filed an appraisal by Sencer Appraisal Associates dated as of March

belonging to it and located at the Property was not included in the sale of the Property. Am. Compl. ¶ 44. Raj & Raj further claims, albeit in conclusory fashion, that Difficile, having acquired the Property, had a "fiduciary relationship" to maintain the personal property for the benefit of Raj & Raj as its "rightful owner". Am. Compl. ¶ 45. Raj & Raj further claims, again in conclusory fashion, that Difficile (i) breached the duty imposed by that fiduciary relationship, (ii) refused to allow Raj & Raj access to the personal property, and (iii) prohibited Raj & Raj from assessing the location and condition of the personal property. Am. Compl. ¶¶ 46-48. Raj & Raj alleges that it has been damaged and continues to be damaged by Difficile's actions. Am. Compl. ¶ 49.

Raj & Raj's third count asserts a claim for unjust enrichment. Raj & Raj alleges that it expended substantial funds to acquire the personal property as itemized by Spencer Appraisal Associates, and that Difficile by its purchase of the Property came into possession of the personal property and was enriched thereby. Am. Compl. ¶¶ 52-53. Raj & Raj continues to allege that while there was no relationship between the parties, the records of the Nassau County Clerk and mere observation of the Property gave cause for Difficile to, at the very least, be aware of Raj & Raj's existence and its rights to the personal property. Am. Compl. ¶ 54. Difficile benefitted from the expenditures by Raj & Raj at the expense of Raj & Raj. Am. Compl. ¶ 55. Raj & Raj asserts that it's against equity and good conscience to permit Difficile to retain the personal property belonging to Raj & Raj located at the Property or the proceeds therefrom or to allow Difficile to receive the benefit of Raj & Raj's performance and expenditures without compensating Raj & Raj. Am. Compl. ¶ 56. On this count, Raj & Raj seeks money damages of more than $1,200,000.

---

16, 2016 as part of its motion to amend the original complaint. It appears that all references in the Amended Complaint to an appraisal report prepared by Spencer Appraisal Associates are to the March 16, 2016 appraisal prepared by Sencer Appraisal Associates.

Raj & Raj's fourth count, titled "conversion", alleges in conclusory fashion that Raj & Raj had a possessory right or interest in the personal property belonging to it at the Property. Am. Compl. ¶ 58. Raj & Raj did not give Difficile or any other third-party permission to keep the personal property belonging to Raj & Raj at the Property, and that Difficile failed to return the personal property to Raj & Raj. Am. Compl. ¶¶ 59-60. Raj & Raj claims that Difficile exercised dominion and control over the personal property for its own use and enjoyment, sold some or all of the personal property, and retained the proceeds of sale. Am. Compl. ¶¶ 61-62. On this count, Raj & Raj seeks money damages of more than $1,200,000.

3.    Motion to Dismiss

Difficile moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice all claims asserted in the Amended Complaint ("Motion to Dismiss"). [Dkt. No. 41]. Given the history of the Trustee's efforts to sell the Property and the record in this bankruptcy case, the Court finds it useful to set forth Difficile's argument, followed by Raj & Raj's opposition to the Motion to Dismiss, and the reply filed by Difficile. Doing so presents a clearer picture of representations made during the bankruptcy case by the Debtor and others concerning the Property, and it underscores the importance of maintaining the integrity of the sale process.

Difficile argues that the sale of the Property was not subject to any leasehold interest held by Raj & Raj. It points to paragraph 3 of the REMM Sale Order which provides that the Property was sold in an "as is" and "where is" condition, free and clear of all liens, claims and encumbrances, including any purported easements, other than the permitted exceptions as that term is defined in the Sale Agreement. Raj & Raj's purported lease is not listed as a permitted exception in the Sale Agreement.

In addition, Difficile points out that the Debtor's bankruptcy schedules filed on June 22, 2016 do not reference a lease between the Debtor and Raj & Raj for tenant space at the Property. Additionally, Debtor's Disclosure Statement to the proposed chapter 11 plan of

reorganization filed on June 30, 2017 [Bankr. Dkt. No. 155] in referencing the former

occupant of the tenant space, the restaurant Singletons owned and managed by Harendra,

states:

> The Debtor has completed renovations of the [r]eal [p]roperty as
> it was unable to lease approximately forty-five (45%) of the space
> until approvals were issued by the Nassau County Fire Marshall
> and Town of Oyster Bay. The previous tenant of that space was
> a restaurant named Singleton's, which was owned and managed
> by Harendra Singh. Singleton's closed in December 2016 (sic)
> when Harendra Singh was arrested by the United States and
> indicted for fraud and other charges. The Debtor was prevented
> from leasing the space until the renovations were completed.
> Final inspection is scheduled for June 30, 2017.

Disclosure Statement at 11.[9] Thereafter, on August 25, 2017, the Debtor filed the Lease

Approval Motion seeking approval of a proposed lease with Bethpage Bistro for the tenant

space formerly occupied by Raj & Raj. At a hearing held on October 5, 2017 on the Lease

Approval Motion, Debtor's counsel confirmed that Bethpage Bistro was a related entity.

> Bethpage Bistro was an entity owned by Mrs. [Rajeswary]
> Singh, never hidden from anyone. She formed it in 2016,
> believing she was going to be able to run a restaurant where
> Singleton's was previously occupied. And then, of course, the
> [T]own said, no, you can't operate here until you make all the
> repairs and fulfill all of our conditions. So Bethpage Bistro did
> not operate from January 2017 through this date – '16, exactly.
> So it never operated other than for about 10 days until the
> [T]own came down and said you can't do that.

Oct. 5, 2017 Hr'g Tr. 51:23-52:6. Debtor's counsel also represented that the Debtor had

retained and engaged brokers to locate a tenant for the vacant space formerly occupied by

Singletons at the Property.

Difficile notes that Harendra held himself out as the principal of Raj & Raj up to the

filing of the Amended Complaint. Difficile contends that Raj & Raj, Harendra and Ruby had

---

[9] The date that Singletons closed appears to be incorrectly listed in the Disclosure Statement. As noted earlier, at
the October 5, 2017 hearing, the Debtor stated that Singletons closed in December 2015. Oct. 5, 2017 Hr'g Tr.
57:19-25 [Bankr. Dkt. No. 219].

actual knowledge of the bankruptcy proceedings. Harendra appeared in the bankruptcy case by counsel as demonstrated by notices of appearance dated November 7, 2016 filed by Messrs. Anthony La Pinta and Michael Fehringer. The Disclosure Statement and the Lease Approval Motion were served upon Harendra's counsel as so stated in the service lists. At no time did Harendra, Ruby, Raj & Raj or Harendra's counsel object to the statements contained in the Disclosure Statement or the Lease Approval Motion which sought to lease the tenant space formerly occupied by Raj & Raj to Bethpage Bistro. Similarly, the affidavit of service for the Trustee's Sale Motion states that Harendra received notice of the Sale Motion through his counsel. Harendra, Ruby, and Raj & Raj did not file any objection or notify Debtor's counsel or the Trustee regarding their claim of a lease at the Property, despite having due notice of the auction and sale, the opportunity to appear in objection to both the Sale Motion and the bidding procedures, and due notice of the final hearing to approve the sale which resulted in the entry of the VMC Sale Order and subsequently the REMM Sale Order.

Taking up the issue of notice, Difficile argues that, to the extent Raj & Raj contends that notice of the Sale Motion sent to Harendra's counsel was insufficient to give Raj & Raj notice because Harendra was prohibited by conditions of his bail from being involved in Raj & Raj's business from August 3, 2016 until June 12, 2019, that contention is belied by the record in this bankruptcy case. Difficile points out that Harendra's bail conditions seemingly did not preclude him from participating in the bankruptcy case as the record shows that he signed the tolling stipulation with the Trustee on behalf of Raj & Raj, commenced this lawsuit against Difficile by verifying the original complaint, and submitted an affidavit as President of Raj & Raj in support of the complaint – all of this occurring during the very time period that Raj & Raj says Harendra was prohibited from having any involvement in Raj & Raj's business. And to the extent Raj & Raj argues that Ruby was in charge of the business, Difficile points out that Ruby only executed a tolling stipulation with the Trustee on behalf of herself,

not as an officer of Raj & Raj, and she failed to disclose any interest in Raj & Raj in her bankruptcy case when she filed bankruptcy schedules on March 26, 2019 and again when she filed amended schedules on July 30, 2019 which disclosed her interests in Ruby's Diner Corp. d/b/a Chow HVS and SRB Catering, but not Raj & Raj.

Difficile also argues that the alleged lease is not enforceable because it violates the Statue of Frauds as set forth under N.Y. GENERAL OBLIGATIONS LAW § 5-703. Raj & Raj did not produce a copy of the purported lease. Rather, Raj & Raj relies upon the 1988 Lease Memorandum and the 1998 Lease Memorandum signed by Harendra as Vice President of both Raj & Raj and the Debtor. The Lease Rider dated February 2011 extending the lease term is signed on behalf of the Debtor by Rajeswary without any indication of her title or authority to act on behalf of the Debtor. Difficile claims that it is impossible to discern who signed the Lease Rider on behalf of Raj & Raj. The two lease memoranda were filed with the Nassau County Clerk's Office, but the Lease Rider was not similarly recorded. Difficile points out that pursuant to the 1998 Lease Memorandum, the lease terminates on January 31, 2019, and argues that the Lease Rider is suspect as it was allegedly signed in February 2011, eight years before the lease was set to terminate under the 1998 Lease Memorandum.

Difficile argues even if the Court determines that a valid lease existed at the time of the sale, Raj & Raj's actions demonstrate that it abandoned and surrendered any rights that it may have under the lease. The restaurant at the Property was not operating and sat empty during the entire pendency of the bankruptcy case. Debtor's counsel admitted at the October 5, 2017 hearing that Singletons closed and that Debtor took significant steps to re-let the Property to a new tenant for the sole purpose of operating a restaurant at the Property, including filing the Lease Approval Motion seeking to enter into a lease with Bethpage Bistro. At a hearing on this adversary proceeding held on June 8, 2019, the Trustee advised the Court that during the pendency of the bankruptcy case, Raj & Raj never asserted that it had

a lease, did not occupy the premises, and did not pay rent to the Debtor. Difficile argues that Raj & Raj's failure to appear in the bankruptcy case and assert the existence of the alleged lease for more than two years constitutes an act or failure to act evidencing Raj & Raj's intent to surrender its rights in the alleged lease.

Difficile also contends that Raj & Raj had a full and fair opportunity to appear in the bankruptcy proceeding and assert the existence of the alleged lease. It did not do so, and thus waived any rights it may have had under the alleged lease. Difficile further contends that Raj & Raj should be both equitably and judicially estopped from asserting a contrary position in this adversary proceeding so as to protect the integrity of the bankruptcy sale process and the possibility of inconsistent and unjust results. In short, Difficile argues that Raj & Raj should not be rewarded by its prior inaction to Difficile's detriment.

Lastly, Difficile argues that counts two, three and four must be dismissed because Raj & Raj has not plausibly alleged that it owns or has a possessory right to the personal property. Difficile states that Raj & Raj attached as Exhibit P to its Motion for Leave to Amend, a letter dated January 31, 2019 from Harvey J. Cavayero, Esq. to the Trustee ("January 31 Letter") in support of its claim of rightful ownership of the subject personal property. The January 31 Letter identifies Mr. Cavayero's client, Bethpage Bistro, as owner of the personal property, not Raj & Raj. Mr. Cavayero also previously appeared in the bankruptcy case as counsel for Rajeswary, the principal of Bethpage Bistro, where he asserted a secured claim on her behalf based on a post-petition loan she had made to the Debtor and approved by order of the Court. In addition, Raj & Raj attached the purported appraisal of Sencer Appraisal Associates dated as of March 16, 2016 as an exhibit to the Motion for Leave to Amend. The appraisal contains an Executive Summary that clearly states that the appraisal was for "Bethpage Bistro Restaurant, 150 Hicksville Road, Bethpage, NY 11714 for Specified Furniture and

Equipment as of March 16, 2016 for Mr. Vivek Singh". It does not mention Raj & Raj's interest

in the personal property subject to the appraisal.

Furthermore, Difficile cites the Rider to the Sale Agreement where the "Property" sold

by the Trustee on behalf of the Debtor's bankruptcy estate is defined as:

> 14.    <u>Key Terms – Property</u>. The property to be sold and
> purchased also includes (a) any land lying in the bed of any
> street, road or avenue, opened or proposed, in front of or
> adjoining the Land to centerline thereof, (b) the buildings,
> improvements, and structures located on the Land (collectively,
> the "<u>Improvements</u>"), (c) the fixtures, equipment and other
> personal property attached or appurtenant to the
> Improvements, to the extent the same belong to Seller (the
> "<u>Personal Property</u>"), (d) all easements and rights appurtenant
> to the Land, if any, including air rights, development rights,
> building rights, and all other entitlements, in each case relating
> to the Land, to the extent existing and legally transferrable, and
> (e) any unpaid award for damage to the Property by reason of
> change of grade of any street (the Land, and all of the foregoing,
> collectively, the "<u>Property</u>").

Motion to Dismiss, Amato Declaration, Ex. D (emphasis in original). Difficile also notes that

the Bill of Sale issued by the Trustee provides, in relevant part:

> In consideration of the sum of Ten Dollars ($10.00) (the
> sufficiency and receipt of which are hereby acknowledged),
> Grantor does hereby grant, bargain, sell, convey, assign,
> transfer, set over and deliver to Grantee, and Grantee hereby
> accepts from Grantor, pursuant to the terms set forth in this Bill
> of Sale, all of Grantor's right, title and interest in and to all of
> the fixtures, equipment and other personal property, to the
> extent the same belong to Seller, now attached, affixed or
> appurtenant to, or located on, the Property (collectively the
> "<u>Personal Property</u>") and all assignable warranties and
> guaranties issued to or inuring to the benefit thereof.

Motion to Dismiss, Ex. U (emphasis in original). In sum, Difficile argues that Raj & Raj has

not sufficiently plead that it is the rightful owner of the personal property and thus counts

two, three and four, which are premised on ownership, must be dismissed. Difficile concludes

that record in the bankruptcy case and the sale process in particular support its argument

that it acquired the personal property as part of the Court-approved sale.

19

4.      Opposition to the Motion to Dismiss

Raj & Raj filed opposition to the Motion to Dismiss. [Dkt. No. 46]. In the first instance, it claims that Difficile goes outside the four corners of the Amended Complaint by proffering documents that are not attached to, referenced in or integral to the Amended Complaint. Raj & Raj thus maintains that Difficile impermissibly seeks summary judgment under Fed. R. Civ. P. 56. Raj & Raj argues that because Difficile disputes both the existence of the lease and the validity of the Lease Rider, and questions the authenticity of the Lease Rider, the issues raised cannot be considered in the context of a motion to dismiss.[10]

As to the personal property at issue, Raj & Raj contends that it has amply set forth the chain of custody of the restaurant furniture, fixtures and equipment and inventory at the Property from October 27, 1988 when Raj & Raj first entered the Property until December 17, 2015 when Harendra was ordered detained. In support, Raj & Raj attaches the affidavit of Mr. Cavayero dated November 7, 2019 ("Cavayero Affidavit") where Mr. Cavayero, in an about face, seeks to clarify his prior statements and representations concerning ownership of the personal property. In his affidavit, Mr. Cavayero states that he represented the interests of Bethpage Bistro and 4021 HTL (VMC's designee) in the Debtor's bankruptcy case and that Bethpage Bistro was formed on January 8, 2016 to operate Singletons at the Property using the installed restaurant furniture, fixtures and equipment, and inventory that he now claims belong to Raj & Raj. According to Mr. Cavayero, Bethpage Bistro had a three-month run before shutting down around April 2016. Mr. Cavayero states that it was not his intention to

---

[10] The Court observes that the documents Raj & Raj is referring to as raised anew by Difficile were either referenced in the Amended Complaint or are part of the record in this bankruptcy case. Thus, the Court is not presented with materials outside the pleadings and conversion of the motion under Fed. R. Civ. P. 12(d) is not required. The Court further observes that in its opposition to the Motion to Dismiss, Raj & Raj alleges additional facts and theories that are not contained in the Amended Complaint. New factual allegations and theories raised for the first time in opposition are not properly before the Court on a motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

state that Bethpage Bistro owned the restaurant furniture, fixtures and equipment, and inventory at the Property.[11] Raj & Raj claims that it attached the January 31 Letter to demonstrate that the Trustee assured Bethpage Bistro's counsel, Mr. Cavayero, that neither the Trustee nor the Debtor's estate had any right, title or interest in the restaurant equipment, fixtures, equipment, and inventory.[12] And Raj & Raj contends that the Rider to the Purchase and Sale Agreement included the sale of fixtures, equipment and other personal property only to the extent they "belonged" to the bankruptcy estate. Since, as Raj & Raj claims, it is the rightful owner of the personal property, the personal property was not property of the bankruptcy estate subject to the sale, and thus Difficile could not have purchased the property at auction.

Raj & Raj argues that the Sale Orders dated November 29, 2019 (sic) and February 1, 2019 should be overturned because Raj & Raj did not receive notice of the bankruptcy sale until the Sale Orders were entered. Raj & Raj reiterates that even though Ruby was listed with the New York Secretary of State as the owner of record and the Debtor's business address is listed as the address for service for Raj & Raj, the Application Pursuant to Local Rule 1009-1(a), Amended Schedule E/F, Supplemental Matrix and Notice of Bankruptcy were served on Raj & Raj at the Rockville Centre Address. According to Raj & Raj, there is no indication of service of these documents on Ruby and that, by at least March 8, 2017, Ruby was known to be Harendra's wife and both resided at 310 Laurel Lane, Laurel Hollow, NY and not at the Rockville Centre Address. Raj & Raj also notes that the Conversion Order was

---

[11] It bears repeating that Mr. Cavayero's January 31, 2019 Letter filed on the docket and in which he confirms his conversation with the Trustee concerning the personal property unequivocally states that Bethpage Bistro owns the personal property.

[12] The Court observes that the Trustee did not file any response to the January 31 Letter. A reading of the January 31 Letter does not in itself establish that the Trustee agreed with the statements made by Mr. Cavayero that the bankruptcy estate did not have an interest in the personal property. What is of import is that Mr. Cavayero made a representation to the Court by filing the January 31 Letter and now, by affidavit submitted some 11 months later, he makes a contrary representation to the Court as to the ownership of the personal property.

also served on Raj & Raj at the Rockville Centre Address. In its opposition, Raj & Raj raises for the first time that neither Ruby nor Raj & Raj received notice of the Sale Motion itself.

Raj & Raj asserts that Rajesh and Rajeswary had long disassociated themselves from Raj & Raj, the only contact being the retention of an abbreviated version of their first names in the name of the corporation. Raj & Raj also notes that service upon Messrs. La Pinta and Fehringer should not be deemed notice to Harendra because the attorneys' appearance in the bankruptcy case was limited to accepting service of a subpoena by the Debtor's attorney for a Bankruptcy Rule 2004 examination and representing Harendra with respect to a motion to quash such subpoena. Raj & Raj claims that Harendra signed the tolling stipulations without going through counsel.

Raj & Raj argues that actual knowledge of and appearance in a bankruptcy case does not waive its entitlement to receive notice of the proposed sale. According to Raj & Raj, service upon it at the Rockville Centre Address was not sufficient service on Ruby. Raj & Raj asserts that having not received notice, it is entitled to void the sale of the Property.[13]

Raj & Raj contends that Difficile's assertion that Ruby failed to include her interest in Raj & Raj in her own bankruptcy filing is irrelevant as it goes beyond the scope of the Amended Complaint and seeks only to impeach or impugn Ruby's character. The chapter 7 trustee in Ruby's bankruptcy case has now been made aware of Ruby's ownership interest in Raj & Raj and its claim against Difficile. Raj & Raj asserts that omission of Raj & Raj from Ruby's bankruptcy schedules was inadvertent.

Lastly, Raj & Raj argues that Difficile's claims that Raj & Raj surrendered or waived its rights in the lease, that the Statute of Frauds is applicable and controlling on the issue,

---

[13] In making this argument as to alleged lack of notice, Raj & Raj repeatedly ignores the undisputed fact that the only address in the record of the underlying bankruptcy case for Raj & Raj is the Rockville Centre Address. That is the address listed in the Debtor's amended schedules for Raj & Raj.

and that the doctrine of judicial and equitable estoppel are likewise determinative, are fact-intensive and require discovery. Raj & Raj claims that whether it surrendered or abandoned the lease depends upon its intention. Further, Raj & Raj argues that it cannot produce a copy of the underlying lease because the lease was stored along with Raj & Raj's business records at the Property and was secured by the Trustee when the Trustee took over the Property and barred the Debtor and Raj & Raj from the Property. In the next sentence, however, Raj & Raj states that it is not in possession of the lease because it was provided to Debtor's counsel for forwarding to the Trustee. Raj & Raj argues that Difficile failed to allege any reliance with respect to the claimed defenses of judicial and equitable estoppel.

> 5.    Difficile's Reply

In its reply [Dkt. No. 48], Difficile argues that sworn statements and documents previously filed in the bankruptcy case, in State Court, and other proceedings by Raj & Raj's principals, representatives and related parties are matters of public record and should be considered in connection with ruling on the Motion to Dismiss as they establish that Raj & Raj had actual notice of the bankruptcy case and such sworn statements and documents conflict and refute the allegations and claims asserted in the Amended Complaint.

Notwithstanding the statement in the Affidavit of Ruby Singh sworn to on November 8, 2019 in support of Raj & Raj's opposition to the Motion to Dismiss that "[f]rom August 3, 2016 until June 12, 2019, [Harendra] had no role with [Raj & Raj], and accordingly, was not one who could receive notice for [Raj & Raj]", Harendra expressly took action on behalf of Raj & Raj during that period. Harendra executed tolling stipulations with the Trustee not only on behalf of himself on Oct. 15, 2018 but also on behalf of Raj & Raj on Nov. 8, 2018 as President. Ruby, on the other hand, signed a tolling stipulation with the Trustee on Oct. 15, 2018 only on behalf of herself. Furthermore, the original State Court complaint includes a verification by Harendra as President of Raj & Raj dated April 10, 2019. Harendra also

submitted to the State Court an affidavit dated April 22, 2019 as President of Raj & Raj in support of Raj & Raj's Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction against Difficile stating that in May 2016, Raj & Raj had notice of the Debtor filing for protection under Chapter 11. Difficile contends that Raj & Raj, Ruby and Harendra had actual notice of, and appeared in, the bankruptcy case and failed to provide a different address for notice or seek to protect their interests and the interest of Raj & Raj. The Rockville Centre Address is the home of Rajesh and Rajeswary, and Difficile finds it implausible that neither would apprise their son, Harendra, and their daughter-in-law, Ruby, with respect to any activities in the bankruptcy case that would impact Raj & Raj or even forwarded their mail.

Difficile disputes that it referenced the absence of any information regarding Ruby's interest in Raj & Raj in her individual chapter 7 bankruptcy proceeding to impeach or impugn her character or to personally attack her, but rather to highlight that prior to the filing of the Amended Complaint, it was Harendra who held himself out as the principal, president, owner and operator of Raj & Raj. Ruby did not appear in relation to Raj & Raj until it became clear that Raj & Raj could not sustain the arguments contained in the original complaint it filed in State Court. It was then that Ruby submitted the verified Amended Complaint and various affidavits in support thereof alleging a new claim that the Sale Orders should be vacated due to lack of notice to her. It is incongruous that Ruby asserts that she has an interest in Raj & Raj but she repeatedly fails to include such interest in her own bankruptcy schedules and Statement of Financial Affairs, even when she amended those filings on July 30, 2019 to include interests in two other restaurants but not Raj & Raj. The chapter 7 trustee in Ruby's case filed a turnover motion on October 16, 2019, which sought among other things, a list of all businesses in which Ruby had an interest in the last four years and a description of the businesses with the most recent filed tax return. Notwithstanding the representations made

in Raj & Raj's opposition to the Motion to Dismiss, Ruby did not amend her bankruptcy filings to include her purported interest in Raj & Raj.

Difficile also notes that the Affidavit of Rajesh K. Singh sworn to on June 17, 2019 ("Rajesh Affidavit") attached to Raj & Raj's opposition papers acknowledges that as principal of the Debtor, he provided all of the known leases for the Property to Debtor's counsel, which documents would presumably include Raj & Raj's address, in order for Debtor's counsel to prepare the Debtor's bankruptcy schedules and mailing matrix. Rajesh's failure to include the Hicksville Address for Raj & Raj in the bankruptcy proceeding is the fault of neither the Trustee nor Difficile. The Trustee relied upon the Debtor's schedules when he served the Sale Motion and each of the Sale Orders. The Rajesh Affidavit states that Rajesh, in his capacity as an officer of the Debtor, delivered all leases, extensions, invoices, and bank statements to Debtor's counsel to be given to Mr. Geron as the Chapter 11 trustee. The Debtor's bankruptcy schedules and statement of financial affairs do not list any existing lease with Raj & Raj. Difficile aptly notes that the Trustee appeared before this Court and represented that he was not in possession of, and did not receive from any party, a copy of a lease in favor of Raj & Raj for the Property.

Even if the Court were to credit Raj & Raj's claims that it had a valid lease, Difficile argues that Raj & Raj abandoned the lease. The restaurant (Singletons) was not operating and the tenant space remained empty throughout the pendency of this bankruptcy case. The Trustee advised the Court at the June 8, 2019 hearing in this adversary proceeding that Raj & Raj (i) never asserted it had a lease at the Property, (ii) did not at any time during the bankruptcy case occupy the Property, and (iii) did not at any time during the bankruptcy case pay rent for tenant space at the Property. Difficile contends that Raj & Raj's failure to assert the existence of an alleged lease for more than two years during the bankruptcy case constitutes an intention to surrender Raj & Raj's rights in the lease. Difficile reiterates its

argument that the alleged lease fails to satisfy the Statute of Frauds because Raj & Raj failed to produce a copy of the lease and referenced only memoranda of lease which, by their own terms, state that the lease expires on January 31, 2019. The Lease Rider dated February 2011 was unrecorded and signed by Rajeswary without any indication as to her title or authority to act on behalf of the Debtor. Difficile also reiterates its arguments regarding waiver, and judicial and equitable estoppel regarding Raj & Raj's first count concerning the alleged lack of notice.

As to Raj & Raj's allegations regarding its ownership interest in the personal property, Difficile argues that Raj & Raj submitted the Cavayero Affidavit in an effort to circumvent the plain language of the January 31 Letter and the Appraisal which identifies Bethpage Bistro as the owner of the personal property. Mr. Cavayero represented Rajeswary, Bethpage Bistro, and 4021 HTL (the initial failed purchaser of the Property) in this bankruptcy case, as well as Ruby in her personal bankruptcy case. Mr. Cavayero, on behalf of 4021 HTL, filed a motion dated January 24, 2019 seeking release of the earnest money deposit that the Trustee claimed 4021 HTL forfeited when, as purchaser, it failed to close on the sale of the Property ("Forfeiture Motion") [Bankr. Dkt. No. 359]. In the Forfeiture Motion, Mr. Cavayero represented that "a substantial amount of furniture, fixtures and equipment … owned by [Bethpage Bistro] with an approximate value in excess of $900,000 remained at the Property and were not part of the Auction Sale." Difficile argues that Mr. Cavayero and Raj & Raj should not be allowed to rewrite history and now claim that the representations made in the Forfeiture Motion and the January 31 Letter and submitted to this Court were in fact false.

# DISCUSSION

## A.  Rule 12(b)(6) Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2)[14]; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id*. The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint; not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation mark omitted). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Although on a motion to dismiss all well-pleaded factual allegations in the complaint are assumed true, *see Koch*, 699 F.3d at 145, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478

---

[14] Fed. R. Civ. P. 8 is made applicable to adversary proceedings pursuant to Bankruptcy Rule 7008.

U.S. 265, 286 (1986). Moreover, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-6 (S.D.N.Y. 2001) (*citing Hirsch v. Arthur Andersen & Co.* 72 F.3d 1085, 1095 (2d Cir. 1995)). *See also Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC) (SMG), 2020 WL 5848619, at *4 (E.D.N.Y. Sept. 30, 2020).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. *See also* Fed. R. Civ. P 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). For a court to consider a document that is external to the complaint as "incorporated by reference," there must be a "clear, definite and substantial reference" to the document in the complaint. *Helprin v. Harcourt*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 F. App'x. 7, 9 (2d Cir. 2011). Conversely, "[m]ultiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y June 4, 2013).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d

Cir. 2002) (*quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Finally, a court may also take judicial notice of matters of public record, including documents filed in other court proceedings, when considering a motion to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

B.  Raj & Raj's First Count

1.  Notice of the Bankruptcy Case

In the its first count, Raj & Raj asserts that the Trustee is permitted to sell property of the bankruptcy estate outside of the ordinary course of business so long as notice is given to "the debtor, the trustee, all creditors and indenture trustees" as prescribed in Bankruptcy Rule 2002(a)(2). However, Raj & Raj's claim against Difficile as purchaser of the Property is not that the Sale Motion was improperly noticed, but rather that Raj & Raj never received *notice of the bankruptcy case* itself before entry of the Sale Orders. Raj & Raj contends that it is this failure to provide notice of the bankruptcy case that constitutes grounds to set aside the sale or treat it as voidable, and that Raj & Raj, as the person who failed to receive notice, may elect to set aside the sale. This argument is unavailing.

First, Raj & Raj does not provide any basis or authority as to why an alleged failure to receive notice of the Debtor's bankruptcy case is grounds for an action against Difficile to set aside the bankruptcy sale. How is it that Difficile is accountable for providing notice of the commencement of the Debtor's bankruptcy case in 2016? Difficile did not appear in the bankruptcy case and did not acquire the Property until 2019 as assignee of REMM, the back-up bidder at the bankruptcy sale. It defies logic to hold Difficile responsible for any claimed lack of notice of the commencement of the Debtor's bankruptcy case. Second, as to notice of the sale itself, Raj & Raj does not cite any authority requiring an entity submitting a bid in anticipation of a bankruptcy auction sale to provide notice of the proposed sale of estate property and any order approving such sale to the debtor's creditors, the bidder's competitors

and other parties in interest. Again, it defies logic to hold Difficile responsible for the giving

of such notice or any claimed lack of such notice on the part of Raj & Raj.

As to the specifics regarding notice of the commencement of a bankruptcy case,

§ 342(a) provides that "[t]here shall be given such notice as is appropriate . . . of an order for

relief in a case" under the Bankruptcy Code. 11 U.S.C. § 342(a). Notice of a bankruptcy filing

is typically provided by the court pursuant to Bankruptcy Rule 2002(f)(1) which provides that

"the clerk, of some other person as the court may direct, shall give the debtor, all creditors,

and indenture trustees notice by mail of: (1) the order for relief …" entered by the court upon

the commencing of a voluntary bankruptcy case. Fed. R. Bankr. P. 2002(f)(1).

In addressing notices of a bankruptcy filing or other pleadings filed with a bankruptcy

court, Bankruptcy Rule 2002(g) provides, in relevant part:

> (1) Notices required to be mailed under Rule 2002 to a creditor, indenture trustee,
> or equity security holder shall be addressed as such entity or an authorized agent
> has directed in its last request filed in the particular case. For purposes of this
> subdivision —
>      (A) a proof of claim filed by a creditor or indenture trustee that designates a
> mailing address constitutes a filed request to mail notices to that address,
> unless a notice of no dividend has been given under Rule 2002(e) and a later notice of
> possible dividend under Rule 3002(c)(5) has not been given; and
>      (B) a proof of interest filed by an equity security holder that designates a
> mailing address constitutes a filed request to mail notices to that address.
>
> (2) Except as provided in § 342(f) of the Code, if a creditor or indenture trustee has
> not filed a request designating a mailing address under Rule 2002(g)(1) or Rule
> 5003(e), the notices shall be mailed to the address shown on the list of creditors or
> schedule of liabilities, whichever is filed later … .

Fed. R. Bankr. P. 2002(g)(1) and (2). For most creditors, therefore, Bankruptcy Rule 2002(g)

dictates how notices required under Bankruptcy 2002(a) are given. Fed. R. Bankr. P. 2002(a)

and (g).

To enable the court to provide notice of the bankruptcy filing and a trustee to provide

notice of certain pleadings under Bankruptcy Rule 2002, a "debtor shall file with the petition

a list containing the name and address of each entity included or to be included" on the

schedules. Fed. R. Bankr. P. 1007(a)(1). *See also* 11 U.S.C. § 521(a)(1)(A). The provider of the list of creditors is required to certify that it is accurate. E.D.N.Y. LBR 1007-1(a).

> There is a presumption that the addresses provided by a debtor on the matrix are the correct addresses for noticing purposes and, thus, notice must be provided to the creditors at those addresses. The court and the [t]rustee should not have to guess why a creditor is served at one address and not at another or not at all. The burden of providing effective notice pursuant to 11 U.S.C. § 342 is always on the debtor.

*In re Arnold*, No. 08-13479, 2010 WL 3810862, at *3 (Bankr. N.D.N.Y. Sept. 27, 2010) (internal citation omitted). *See also In re O'Shaughnessy*, 252 B.R. 722, 734 (Bankr. N.D. Ill. 2000) (finding that "the [d]ebtor bears the burden of attempting to ascertain correct addresses for his creditors.").

"In listing addresses, a debtor should make every effort to provide reasonable notice to creditors." *In re Gaffney*, Case No. 19-71492, 2020 WL 6066004, at *4 (Bankr. C.D. Ill. Sept. 29, 2020) (*citing In re Glenwood Medical Grp., Ltd.*, 211 B.R. 282, 285 (Bankr. N.D. Ill. 1997)). Notice is reasonable if it is "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

However, "[d]ue process does not always require formal, written notice of court proceedings; informal actual notice will suffice." *In the matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990). A creditor's actual knowledge of a bankruptcy filing may satisfy due process requirements and places a duty of inquiry on the creditor. *Gaffney*, 2020 WL 6066004, at *7. "A party with actual notice of a bankruptcy case must act diligently to protect its interest, despite the lack of formal notice." *O'Shaughnessy*, 252 B.R. at 730. A party "who independently acquires knowledge of a pending action that will affect its rights cannot sit

idly by, let time pass and assert its rights at a later date when it may be impossible or impractical to unwind earlier actions that affect the rights of others." *In re Queen Elizabeth Realty Corp.*, Case No. 13-12335 (SMB), 2017 WL 1102865, at *5 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd*, 586 B.R. 95 (S.DN.Y. 2018).

Here, the Debtor provided the Court with a matrix list that included Raj & Raj at the Rockville Centre Address which the Court, the Debtor, and subsequently, the Trustee, used for noticing purposes pursuant to Bankruptcy Rule 2002. Neither the Court nor the Trustee had any reason to question the accuracy of the Rockville Centre Address as it was the Debtor's obligation to provide addresses reasonably calculated to provide appropriate notice of the bankruptcy case. Congress could have required notice of a debtor's bankruptcy filing be made in the same manner as service of process under Bankruptcy Rule 7004 for certain pleadings, but it chose not to do so. Fed. R. Bankr. P. 7004(b)(3).

Indeed, as to notice of a sale of estate property other than in the ordinary course, Bankruptcy Rule 2002(c) provides that notice under Bankruptcy Rule 2002(a)(2) is subject to Bankruptcy Rule 6004. Fed. R. Bankr. P. 2002(c)(1). Bankruptcy Rule 6004(c) provides, in pertinent part:

> (c) Sale Free and Clear of Liens and Other Interests. A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold.

Fed. R. Bankr. P. 6004(c). Bankruptcy Rule 9014 requires that contested motions be served in a manner similar to service of a summons and complaint as set forth in Bankruptcy Rule 7004. Fed. R. Bankr. P. 9014(b). Bankruptcy Rule 7004(b)(3) provides that service upon a domestic corporation shall be by mail:

> to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute

32

> to receive service and the statute so requires, by also mailing a
> copy to the defendant.

Fed. R. Bankr. P. 7004(b)(3). Unlike notice of the commencement of a bankruptcy case, "[t]he law is clear that an entity that holds or asserts an interest in a property the trustee seeks to sell is entitled to receive notice of the trustee's intent to sell that property, particular when the trustee seeks to sell the property free and clear of that entity's interest." *South Motor Co. of Dade Cty. v. Carter-Pritchett-Hodges, Inc. (In re MMH Auto. Group, LLC)*, 385 B.R. 347, 357 (Bankr. S.D. Fla. 2008) (citing *Mancuso v. The Meadowbrook Mall Co. Ltd. P'ship (In re Rest. Assoc., L.L.C.)*, Civil Action No. 1:06CV53, 2007 WL 951849, at *10 (N.D.W. Va. 2007)).

When ruling on the consequences of a failure to provide notice pursuant to Bankruptcy Rules 6004(c) and 7004(b), courts generally follow one of three approaches with respect to a sale order entered before the deficiency in service is known. The first approach, as advocated by Raj & Raj albeit without citation to any authority, is to set aside the sale order. Courts follow this approach where a party has (1) a pecuniary or ownership interest in the property that was directly and adversely affected by the sale, or (2) a secured interest in the property or sale proceeds, such as a mortgage or a judgment lien, and the sale affected the recovery of that secured interest. A lack of notice raises the issue of due process and a court's exercise of personal jurisdiction, i.e., that parties are provided with proper notice that a matter is pending before the court and afforded an opportunity to appear and be heard. *See BNSF Ry. Co v. Tyrrell,* 137 S.Ct. 1549, 1555 (2017). In the absence of adequate and proper notice, a court must consider the effect of a bankruptcy sale on a creditor's property interests and whether the bankruptcy sale should be set aside. *Archer-Daniels-Midland Co. v. Country Visions* Coop., Case No. 17-cv-0313-bhl, 2021 WL 651553, at *5 (E.D. Wis. Feb. 19, 2021), *appeal docketed*, No. 21-1400 (7th Cir. Mar. 5, 2021) (setting aside bankruptcy sale of real estate to stalking horse bidder where purchaser was aware of defendant's right of first refusal

to purchase the property based on a title report and defendant was not included on the service list for notice of the sale); *Citicorp Mortg., Inc. v. Brooks (In re Ex-Cel Concrete Co., Inc.)*, 178 B.R. 198 (B.A.P. 9th Cir. 1995) (setting aside order authorizing sale of property free and clear where the senior lienholder did not receive notice of the sale and the sale proceeds were significantly less than the amount secured by the senior lien). *See also Walker v. Lee (In re Rounds)*, 229 B.R. 758 (Bankr. W.D. Ark. 1999) (setting aside sale order where (i) trustee failed to provide notice of the proposed sale to creditor who claimed temporary ownership of the land sold and had made improvements upon the land and (ii) buyers were aware of the creditor's interest in the land); *Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616 (Bankr. E.D. Pa. 1987) (holding that sale of real property as contemplated by the debtor's confirmed chapter 11 plan without notice to a judgment lien creditor is voidable at the option of the creditor with the sale to be rescheduled if the creditor opts to void the sale within five days of the court's ruling).

The second approach taken by courts confronted with an issue of insufficient notice of a bankruptcy sale is to uphold the sale order except as to the party who did not receive notice. *In re Rest. Assocs., L.L.C.*, Civil Action No. 1:06CV53, 2007 WL 951849, at *10 n.11 (remanding to the bankruptcy court to review whether the sale was or should have been free and clear of any use covenants in the chain of title that inured to the benefit of defendant, and if so, whether the defendant seeking enforcement of those covenants had actual notice of the sale, but noting that any review of the trustee's sale will not affect the actual sale of the property).

The third approach taken by courts on the issue of insufficient notice of a bankruptcy sale, like the second approach, does not end with setting aside the sale order. Rather, this approach

> seeks to fashion an equitable remedy by balancing the rights of the party whose interests have been compromised without notice, with the rights of a purchaser who relied on the selling party, the trustee or debtor-in-possession, to properly notify all parties in interest and who relied on a final order confirming the sale free and clear of all liens, claims and interests.

*MMH Auto. Group, LLC*, 385 B.R. at 359. *See also United States v. Nat'l Westminster Bank USA (In re Q-C Circuits Corp.),* 231 B.R. 506 (E.D.N.Y. 1999) (directing disgorgement of funds paid to the mortgagee as a result of the sale of certain of the debtor's property where the IRS, which held a priority tax lien against the property, was not provided with notice of the proposed sale order that allowed the mortgagee to be paid ahead of the IRS); *In re Edwards*, 962 F.2d 641 (7th Cir. 1992) (affirming dismissal of a motion to vacate a sale order and complaint seeking determination that the second mortgage lienholder had priority over other liens where the lienholder did not receive notice of the sale of real property because the lienholder (i) did not suggest that the real property was worth more than the sale price, (ii) was not prejudiced by the sale, and (iii) waited to set aside the sale); *Owens-Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.),* 759 F.2d 1440 (9th Cir. 1985) (recommending plaintiff be given a super-priority administrative expense claim under § 507(b) to avoid disturbing the cash collateral order where plaintiff had only one day's notice of the proposed order authorizing debtor to use proceeds from the sale of inventory in which plaintiff had a junior lien to satisfy not only a bank's senior lien, but also additional debt incurred under the cash collateral order).

In *MMH Auto. Group, LLC*, the trustee sold real property that was subject to an unrecorded 99-year lease of a billboard where the lessee had prepaid the rental fee. The trustee was aware of the lease but did not move to assume or reject the lease and failed to give notice of the proposed sale to the billboard lessee or inform the purchaser of the existence of the billboard lease. The lessee was unaware of the landlord's bankruptcy filing and did not

have notice of the sale of the real property. When the purchaser became aware of the billboard lease, it commenced an adversary proceeding to determine that the billboard lessee did not possess a leasehold interest in the real property sold by the bankruptcy trustee. The court found that while the lessee was entitled to notice of the sale motion, "confidence in the finality of bankruptcy sales is of critical importance, and there are only limited circumstances in which a bankruptcy sale should be set aside." *Id.* at 360. The court examined whether the bankruptcy trustee had the right to sell the real property free and clear of the lessee's interest under §§ 363(f) and 365(h) and concluded that the lessee could be compelled, in a legal or equitable proceeding, to accept a  money satisfaction of its leasehold interest and the trustee, therefore, could have sold the real property free and clear of the billboard lease.

Here, notice of the Debtor's May 23, 2016 bankruptcy filing given to Raj & Raj at the Rockville Centre Address, the address listed for Raj & Raj in the Debtor's schedules, was appropriate under § 342 and Bankruptcy Rule 2002 as set forth further below. The Debtor's Schedule G (Executory Contracts and Unexpired Leases) listed several unexpired leases at the Property but did not list a lease between the Debtor and Raj & Raj. It is undisputed that Singletons, the restaurant operated by Harendra in the tenant space formerly occupied by Raj & Raj, ceased operations at the end of 2015 and Bethpage Bistro, an affiliated entity owned by Rajeswary, operated in the Raj & Raj's tenant space for a brief period in 2016 prior to the Debtor's bankruptcy filing. During the bankruptcy case, the Debtor sought to lease this same tenant space to Bethpage Bistro. As noted above, in conjunction with efforts to lease the vacant space, the Debtor did not move to reject any lease with Raj & Raj, nor did the Debtor move to assume and assign a lease allegedly held by Raj & Raj to Bethpage Bistro. The Debtor simply asked for authority to enter into a lease for vacant space at the Property. What is clear from the record in this case is that neither the Debtor nor Harendra's parents considered Raj & Raj a tenant at the time the bankruptcy case was filed. It defies logic for

Raj & Raj to claim otherwise and assert that notice of the Debtor's bankruptcy filing should have been sent to it at the Hicksville Address when (i) in 2015, prior to the date the Debtor filed it bankruptcy case, Singletons, the restaurant owned and operated by Harendra at the Hicksville Address ceased operating and Raj & Raj no longer occupied tenant space at that location under any alleged lease, (ii) another entity, Bethpage Bistro, conducted business in the very same tenant space during the intervening period, and (iii) after the bankruptcy filing the Debtor sought to enter into a lease with Bethpage Bistro for the tenant space.

The Debtor listed Raj & Raj in its bankruptcy schedules not as a tenant under an unexpired lease, but rather as an unsecured non-priority creditor with an unknown claim. Interestingly, it was Rajesh who provided the Rockville Centre Address for Raj & Raj in the Debtor's schedules as opposed to the home address of Harendra and Ruby even though Rajesh certainly knew the home address of his son and daughter-in-law. Accordingly, notice of the bankruptcy case provided to Raj & Raj at the Rockville Centre Address in accordance with both § 342(a) and Bankruptcy Rule 2002 was appropriate under the circumstances of this bankruptcy case and consistent with the list of creditors and schedules filed by the Debtor with the Court. Similarly, subsequent service of various notices for the Application Pursuant to Local Rule 1009-1(a) Amended Schedule E/F, Supplemental Matrix, the Conversion Motion and Conversion Order were also appropriate pursuant to Bankruptcy Rules 2002(a), (f), and (g).

Additionally, despite the claimed deficiency as to the proper address for Raj & Raj for noticing purposes, the record shows that Raj & Raj did receive actual notice of the bankruptcy case through Harendra who acted on behalf of Raj & Raj at least through the date of the filing of the Amended Complaint. The original complaint filed in State Court in April of 2019 against Difficile was verified by Harendra as President of Raj & Raj. [Dkt. No. 1]. Soon after the original complaint was filed in State Court, Raj & Raj filed an Order to Show Cause for

37

a temporary restraining order and preliminary injunction against Difficile accompanied by the sworn affidavit of Harendra, dated April 22, 2019, where Harendra, as president of Raj & Raj, states under penalty of perjury that "[i]n May 2016, [Raj & Raj] learned that [the Debtor] filed for protection under Chapter 11 of the United States Bankruptcy Code." [Dkt. No. 1].

Furthermore, Harendra signed the tolling stipulations with the Trustee in 2018 not only on behalf of himself individually, but also on behalf of Raj & Raj as owner. When Berger Fischoff sought to withdraw as counsel in this adversary proceeding, Harendra filed opposition on behalf of Raj & Raj and appeared before the Court at the hearing on Berger Fischoff's Withdrawal Motion. Also, it bears repeating that Ruby signed her tolling stipulation in her individual capacity and did not sign a tolling stipulation as owner or officer of Raj & Raj, nor did she appear in the Debtor's bankruptcy case on behalf of Raj & Raj. Given the time frame of the submission of the tolling stipulations by Ruby and Harendra, and the subsequent sale of the Property at auction by the Trustee, it is inconceivable for Raj & Raj to claim that neither it, Ruby nor Harendra had notice of the filing of the Debtor's bankruptcy case. Although the tolling stipulations were signed one day after entry of the Court's order authorizing the Trustee to conduct an auction sale of the Property, Harendra and Ruby had ample opportunity to review the docket in this bankruptcy case, inquire whether Raj & Raj's alleged lease may be affected by the bankruptcy filing, and to object to the sale of the Property and the entry of an order approving the sale of estate property, including property which it claimed an ownership interest in.

In addition, in early August 2016, a few months after the Debtor filed its bankruptcy case, the Debtor filed an application with the Court seeking an order authorizing the issuance of subpoenas pursuant to Bankruptcy Rule 2004 for the production of documents and oral examination of Harendra ("Rule 2004 Subpoenas"). [Bankr. Dkt. No. 57]. The application for

the Rule 2004 Subpoenas was served on Harendra at his home address at Laurel Hollow. The Court granted the application on September 15, 2016. [Bankr. Dkt. No. 60]. On November 7, 2016, Messrs. La Pinta and Fehringer of Reynolds, Caronia, Gianelli & La Pinta, P.C. ("Reynolds Caronia") filed notices of appearance pursuant to Bankruptcy Rule 2002(g)(1) on behalf of Harendra requesting the firm receive "not only the notices and papers referred to in the Bankruptcy Rules and Bankruptcy Codes (sic) . . . but also . . ., without limitation, orders, and notices of any application, motion, petition, pleading, request, complaint or demand, whether formal or informal, whether written or oral". [Bankr. Dkt. Nos. 75,76]. Contemporaneously, Reynolds Caronia filed a motion on behalf of Harendra to quash the Rule 2004 Subpoenas ("Motion to Quash"). [Bankr. Dkt. No. 77] and appeared before the Court on the Motion to Quash on December 1, 2016. Notwithstanding Raj & Raj's argument that Reynolds Caronia appeared in the bankruptcy case for the limited purpose of filing the Motion to Quash, the notices of appearance filed by the firm did not contain any such limitation. Reynolds Caronia did not withdraw its appearance on behalf of Harendra in the bankruptcy case after the issue raised by the Rule 2004 Subpoenas was heard and ruled upon by the Court. As such, notice of pleadings in this bankruptcy case continued to be sent to Harendra's attorneys as set forth under Bankruptcy Rule 2002(g)(1) as the notice of appearance was the last request in the Court's records instructing the Court, the Debtor, Trustee and other parties where notice of pleadings filed in this bankruptcy case addressed to Harendra should be sent.

Even if Reynolds Caronia's involvement in the Debtor's bankruptcy case on behalf of Harendra ceased in 2016 as asserted by Raj & Raj, Harendra did nothing to ensure that he, Ruby and Raj & Raj received notice of pleadings filed in the bankruptcy case. Harendra did not file a request that all future pleadings now be sent to the attention of Ruby, Raj & Raj or him at the Hicksville Address or to his residence, nor did he take any steps to change the

Court's mailing address for Raj & Raj. Rather, he sat idly by as the Debtor sought to lease the tenant space formerly occupied by Raj & Raj to an entity created by his mother, and again when the Trustee sought approval of the sale of the Property to VMC, as the successful bidder at the bankruptcy auction sale, and subsequently when the Trustee sought to sell the Property to REMM as the back-up bidder. Raj & Raj had ample opportunity to appear before this Court to assert both a claimed leasehold interest in tenant space at the Property and a possessory interest in certain personal property located at the Property; yet it, as well as Harendra and Ruby, chose to remain silent.

In sum, Raj & Raj's claim that the sale order be set aside because it did not receive notice of the Debtor's bankruptcy case must be dismissed. The Amended Complaint contains no non-conclusory allegations suggesting that Raj & Raj did not have notice of the bankruptcy case. Nor does it plausibly allege that Difficile was obligated to assure that Raj & Raj, as well as Harendra and Ruby, received notice of the commencement of the Debtor's bankruptcy case in 2016.

The Court now turns to the second claim alleged by Raj & Raj as grounds for setting aside the Sale Orders, to wit, that Raj & Raj, Harendra and Ruby did not have notice of the bankruptcy sale.

2.   Alleged Lack of Notice of the Sale Motion

As a threshold matter, it merits noting again that despite Raj & Raj's claim that the Sale Orders must be set aside because it did not receive notice of the bankruptcy sale, the Amended Complaint does not contain any non-conclusory allegation that Raj & Raj did not receive notice of the bankruptcy sale or that Difficile was obligated to provide any such notice. Rather, the Amended Complaint refers to the lack of notice of the bankruptcy sale in a one-sentence conclusory statement in paragraph 5 under the heading Jurisdiction and Venue to support its claimed basis for subject matter jurisdiction, Am. Compl. ¶ 5, and again in a one-

sentence conclusory statement in paragraph 11 under the heading Nature of the Proceeding as a basis to set aside the Sale Orders under Fed. R. Civ. P. 60(b)(6), Am. Compl. ¶ 11. For this reason alone, the claim of lack of notice must be dismissed as Raj & Raj has failed to plausibly allege that it did not receive notice of the bankruptcy sale. However, for the sake of completeness, the Court will address this purported claim. In doing so, the issue is whether Raj & Raj has a claim for relief against Difficile, a back-up bidder at the auction sale, because the Trustee did not serve the Sale Motion on Raj & Raj in care of Ruby at the Hicksville Address. This issue, i.e., notice of a bankruptcy sale under § 363(b), implicates Bankruptcy Rules 3002(c), 6004(c), 9014 and 7004.

As discussed above, the purpose of requiring more stringent notice of a sale of property of the estate, other than in the ordinary course of business, under § 363(b) is to provide notice that an entity's interest in property may be affected by a sale free and clear of liens, claims and encumbrances. Here, the Trustee did not serve a copy of the Sale Motion on the existing tenants at the Property. However, while the Sale Motion sought a sale of the Property free and clear of liens, claims and encumbrances under § 363(f), the Trustee did not seek authority to sell the Property free and clear of existing leasehold interests and similarly did not seek to divest existing tenants of their respective leasehold interests at the Property. Nor did the Trustee file a motion under § 365 (a) to reject any of the Debtor's leases. Instead, he sought authority to assume and assign the existing leases to the successful buyer as part of the sale transaction. Consistent with that request, and in accordance with the REMM Sale Order, the Trustee executed an Assignment and Assumption of Leases, Rents, Security Deposits and Contacts dated February 5, 2019 [Dkt. No. 41] in favor of Difficile. By these documents, the Trustee assumed and assigned to Difficile all leases listed on the Debtor's Schedule G, as well a lease with Bethpage Medical which was not listed on Schedule G. While it may have been prudent for the Trustee to provide notice of the Sale Motion to the Debtor's tenants, the

assumption and assignment of the existing leases confirm that the Trustee had no intention of affecting any of the tenants' rights under their respective leases. In the end, Difficile purchased the Property subject to the existing leases set forth in the assumption and assignment documents. Absent from the Sale Motion is any reference to an existing lease with Raj & Raj. That absence is not surprising because, as noted above, not once during the bankruptcy case, which Raj & Raj clearly had notice of, and prior to the entry of the Sale Orders, did Raj & Raj appear and assert a leasehold interest.

Unlike in *MMH Auto. Group, LLC* where the trustee was aware of an unrecorded billboard lease prior to the proposed sale of the real property, there is nothing in the Debtor's bankruptcy case suggesting that Raj & Raj asserted an existing leasehold interest that should have caught the eye of the Trustee. Rather, events that took place both before and after the filing of the bankruptcy case indicate otherwise – Singletons ceased operating at the tenant space well before the bankruptcy case was filed; Bethpage Bistro occupied the tenant space for an abbreviated period before the filing of the bankruptcy case; the tenant space remained vacant during the bankruptcy case; the Debtor filed the Lease Approval Motion seeking Court authority to lease the tenant space to Bethpage Bistro; and the Trustee did not move to reject or assume and assign any lease with Raj & Raj. Further, the Trustee's Interim Final Report dated August 15, 2019 [Bankr. Dkt. No. 423], which itemizes rent received by the bankruptcy estate from the Conversion Date to May 31, 2019, does not list any rent payment from Raj & Raj. Had the Trustee been aware of a valid and enforceable lease in favor of Raj & Raj, he would have moved to compel payment of rent and otherwise dealt with the lease during the bankruptcy case. That he did not do so is telling. Raj & Raj never made its alleged leasehold interest known. And if the Trustee was not aware of the purported lease, how then can Raj & Raj plausibly assert that Difficile, as the assignee of a back-up bidder at an auction sale, be held responsible for a claimed lack of notice of the sale process? How is it that Difficile,

who arrived on the scene after the auction concluded and the sale approved by the Court to REMM as back-up bidder, may be found responsible for ensuring that the very address listed in the Debtor's schedules for Raj & Raj and used by the Trustee to provide notice of the sale transaction to Raj & Raj was appropriate and in keeping with Bankruptcy Rules 6004(c), 9014 and 7004(b)(3)?  To impose this obligation upon Difficile, or to even suggest that REMM, as a bidder at the auction sale, was obligated to make sure that Raj & Raj received notice of the sale process, Raj & Raj argues that because the 1988 Lease Memorandum and the 1999 Lease Memorandum[15] were filed with the County Clerk's Office, it should have been obvious that it had an existing leasehold interest in the Property. This argument is unavailing and serves to undercut Raj & Raj's claim that it held an existing lease at the time Difficile closed on the sale transaction. Those documents reflect that to the extent Raj & Raj held a valid lease, it expired by its terms on January 19, 2019. And let's again not lose sight of the fact that not once did Raj & Raj appear in the bankruptcy case and claim any leasehold interest.

As for Raj & Raj's claim against Difficile for the lack of notice, this case is distinguishable from *Archer-Daniels-Midland* where the court held that a stalking horse bidder, who eventually purchased property subject to a known right of first refusal, had an obligation to ensure compliance with the sale notice requirements under the Bankruptcy Rules. Here, Difficile was not the stalking horse bidder but rather the assignee of a back-up bidder at a bankruptcy auction sale. As noted above, Difficile had nothing to do with the Trustee's filing and serving of the Sale Motion. It appeared in this bankruptcy case well after the auction sale concluded as assignee of REMM, the back-up bidder. Furthermore, its presence in this bankruptcy case came about solely because the successful bidder at the auction, VMC, or its designee 4021 HTL, failed to close and the Trustee sought to close the

---

[15] As noted earlier, neither the 1998 Lease Memorandum nor the 1999 Lease Memorandum are attached as exhibits to the Amended Complaint.

transaction with REMM as back-up bidder, who later assigned its rights under the purchase and sale agreement to Difficile. In short, Raj & Raj's claim that it did not receive notice of the bankruptcy sale rests on the theory that Difficile was required to provide such notice. In its opposition brief, Raj & Raj does not cite any authority, statutory or otherwise, to support any claim that Difficile (or REMM) was required to give notice of the bankruptcy sale, and the Amended Complaint does not contain any non-conclusory allegation suggesting that Difficile (or REMM) had an obligation to ensure that all existing tenants at the Property received the required statutory notice of the Sale Motion.

Once again it merits repeating that Raj & Raj was included in the mailing matrix filed by the Debtor at the inception of its bankruptcy case. The address listed in the mailing matrix is the Rockville Centre Address. The record in the bankruptcy case does not contain any other address for Raj & Raj, and Raj & Raj never appeared in the bankruptcy case to assert rights under an existing lease or an interest in any property held by the estate. The Trustee served the Sale Motion upon Raj & Raj at the Rockville Centre Address as a matter of course because that was the address listed in the mailing matrix.

Nevertheless, Raj & Raj argues in essence that notice of the sale should have been given to it pursuant to Bankruptcy Rules 6004(c), 9014 and 7004(b)(3) and thus service of the Sale Motion upon it at the Hicksville Address was required. This argument does not carry the day. Raj & Raj was not a secured creditor with a lien against the Property nor did it have an ownership interest in the Property such that a sale of the Property would directly and adversely affect its interest in the Property itself or in the sale proceeds. Raj & Raj is simply a former tenant who vacated the tenant space in 2015. Even in *MMH Auto. Group, LLC*, the court did not set aside the sale order because of insufficient notice, but directed the sale be free and clear of the unrecorded billboard lease on the basis that the lessee could be compelled to accept a monetary satisfaction of its leasehold interest instead. Here, keeping the Sale

Orders in place would not adversely impact Raj & Raj whereas setting aside the Sale Orders would negatively affect the mortgagee, Difficile and the Debtor's bankruptcy estate. The sale has long closed, the mortgagee has been paid from the sale proceeds and the Trustee has filed his final report and account. Rather, if Raj & Raj can establish that it holds a valid and enforceable lease and it is the rightful owner of certain personal property, it may then claim that those rights are not affected by the sale, i.e., that Difficile took subject to the lease and the estate has no interest in personal property owned by Raj & Raj.

Thus, any relief accorded Raj & Raj turns on not whether the Sale Orders should be set aside as Raj & Raj demands, but whether the sale of the Property to Difficile was subject to Raj & Raj's lease, which, interestingly, was the very relief sought in Raj & Raj's original complaint and omitted from the Amended Complaint after Difficile filed its first sanctions motion against Raj & Raj, Harendra and Berger Fischoff. In its Motion to Dismiss, Difficile questions whether Raj & Raj held an existing leasehold interest and argues that to the extent it did so, it abandoned and surrendered that interest. The Court need not reach the argument of abandonment and surrender because the question of whether the lease was extended to 2039, as claimed by Raj & Raj, and that Difficile thus bought the Property subject to the lease is quickly put aside. Raj & Raj admits that while the 1988 Memorandum of Lease and 1998 Memorandum of Lease were filed with the County Clerk's office, the Lease Rider, which Raj & Raj asserts modified the 1998 Memorandum of Lease to extend the lease term to 2039, was never recorded with the County Clerk's office.

Section 291-cc of N.Y. REAL PROPERTY Law provides in pertinent part:

> where a lease or memorandum of such lease has been recorded, an unrecorded agreement modifying such lease or memorandum is void as against a subsequent purchaser in good faith and for a valuable consideration, and the possession of the tenant shall not be deemed notice of the modification, unless the modification or a memorandum thereof is recorded prior to the recording of

> the instrument by which the subsequent purchaser acquires his
> estate or interest.

N.Y. REAL PROP. LAW § 291-cc (McKinney 2021).

That Difficile is "a subsequent purchaser in good faith and for a valuable consideration" is not challenged by Raj & Raj nor is there any allegation in the Amended Complaint to that effect. The issue centers on the unrecorded Lease Rider, the authenticity of which has been questioned by Difficile. A search of the County Clerk's office respecting the Property would have revealed that, pursuant to the recorded 1998 Lease Memorandum, Raj & Raj's lease expired on January 31, 2019, a day prior to the Court's entry of the REMM Sale Order and a few days prior to the Trustee closing on the sale with Difficile, i.e., February 5, 2019. Accordingly, the unrecorded Lease Rider that purportedly extended Raj & Raj's interest in the lease for an additional 20 years to January 31, 2039 is void as to Difficile under N.Y. REAL PROPERTY LAW § 291-cc. Making the REMM Sale Order subject to Raj & Raj's lease then would be of no moment as Raj & Raj's lease ended before Difficile took title to, and possession of, the Property. As such, Raj & Raj has failed to plausibly allege that Difficile did not purchase the Property free and clear of any leasehold interest Raj & Raj may have had.

With that said, the Court need not consider whether the third approach of fashioning an equitable remedy set forth in *MMH Auto. Group, LLC* is applicable here vis-à-vis Difficile. Rather, to the extent Raj & Raj believed it had a meritorious claim relating to an alleged leasehold interest that arose either prepetition or during the time the Property was in the possession of the bankruptcy estate, Raj & Raj should have brought that claim to the attention of the Trustee and the Court. It did not. Accordingly, for all of the foregoing reasons, Raj & Raj's claim that the Sale Orders be vacated for lack of notice of the Debtor's bankruptcy filing and the bankruptcy sale must be dismissed.

The Court now turns to the remaining three counts of the Amended Complaint which all relate to and depend on Raj & Raj's claimed ownership to certain personal property located at the Property. These claims seek an accounting and damages for unjust enrichment and conversion. Each is discussed below.

### C. Claims Relating to Personal Property

#### 1. Accounting

A cause of action for accounting under New York law requires "the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest". *Greenberg v. Wiesel*, 186 A.D.3d 1336, 1338, 131 N.Y.S.3d 36, 39 (2d Dep't 2020) (*quoting Palazzo v. Palazzo,* 121 A.D.2d 261, 265, 503 N.Y.S.2d 381 (2d Dep't 1986)). A party must establish: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (*quoting Pressman v. Estate of Steinvorth*, 860 F. Supp. 171, 179 (S.D.N.Y. 1994)). An accounting is an equitable remedy which requires a fiduciary to show what the fiduciary did with the money or property entrusted to him by the principal. *David v. Rabuffetti*, No. 08 Civ. 5647(RJS), 2011 WL 1346997, at *5 (S.D.N.Y. Mar. 30, 2011). Accordingly, a fiduciary relationship must exist between the parties, *Byrd v. Brown*, 94 Fed. Appx. 1, 2 (2d Cir. 2004), and money or property must have been entrusted to the defendant, *Mendelsohn v. Paragon Mortg. Bankers Corp. (In re Parker)*, 399 B.R. 577, 582 (Bankr. E.D.N.Y. 2009).

Here, notably absent from the Amended Complaint is any non-conclusory allegation of a fiduciary or confidential relationship between the parties. Nor is there any allegation

that Raj & Raj communicated in any manner with Difficile prior to its purchase of the Property or that Raj & Raj entrusted personal property to Difficile. Accordingly, having failed to plausibly allege the threshold requirement of a fiduciary or confidential relationship between the parties, Raj & Raj's claim for an accounting must be dismissed.

      2.  Unjust Enrichment

An unjust enrichment claim under New York law must allege that defendant was enriched at plaintiff's expense and that "it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered." *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 131 (Bankr. S.D.N.Y. 2011) (*quoting Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110, 919 N.Y.S.2d 465, 471 (2011)). Thus, to state a claim for unjust enrichment, a plaintiff must demonstrate "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd.*, 16 N.Y.3d at 182 (*quoting Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48 (2d Dep't 2004)). While privity between the parties is not required, a claim for unjust enrichment will not be supported if the connection is "too attenuated." *Georgia Malone & Co., Inc. v. Reider*, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 746, 950 N.Y.S.2d 333, 336 (2012). The factual allegations must indicate at a minimum a relationship between the parties that could have caused reliance or inducement or at least an awareness by the defendant of the plaintiff's existence. *Mandarin Trading Ltd.*, 16 N.Y.3d at 182.

Applying these legal principles, the third count of the Amended Complaint fares no better than counts one and two. Raj & Raj failed to assert any non-conclusory allegations to plausibly support the inference of a relationship between it and Difficile that "could have caused reliance or inducement" on its part, and there are no allegations suggesting that Difficile was even aware of Raj & Raj's existence. Any purchaser conducting due diligence

and a review of the bankruptcy case docket and pleadings would have noted: (1) the absence of any disclosure of Raj & Raj's lease on the Debtor's schedules, (2) the span of more than 3 years from when Raj & Raj ceased operations and occupancy of the Property to when the sale of the Property occurred, (3) the operation of the very same tenant space prepetition by Bethpage Bistro, and (4) the attempt by the Debtor to lease the very same tenant space to Bethpage Bistro during the bankruptcy case. As discussed above, Raj & Raj's lease was not among the leases assumed and assigned to Difficile as part of the sale of the Property. Additionally, a review of the County Clerk's records would show that the 1998 Lease Memorandum relied upon by Raj & Raj to support its claim of an existing leasehold interest states unequivocally that the lease expired on January 31, 2019. There is nothing in the County records or on the docket of this bankruptcy case that would have placed Difficile or any other party seeking to acquire the Property on notice that Raj & Raj was party to a lease with an expiration date beyond January 31, 2019 and that there may be personal property belonging to Raj & Raj at the Property. Accordingly, the unjust enrichment claim must be dismissed.

### 3. Conversion

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito*, 8 N.Y.3d at 50 (internal citations omitted); *see also Pappas v. Tzolis*, 20 N.Y.3d 228, 234, 982 N.E.2d 576, 958 N.Y.S.2d 656 (2012). "[W]here the defendant obtained possession of the property lawfully, a conversion claim accrues only after the plaintiff's demand for the property is

refused by the defendant." *Haraden Motorcar Corp. v. Bonarrigo*, 1:19-cv-01079 (BKS/DJS), 2020 WL 1915125, at \*10 (N.D.N.Y. Apr. 20, 2020) (*citing Leveraged Leasing Admin. Corp. v PacifiCorp. Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996)). *See also White v. City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369, 370 (2d Dep't 1995) (noting that "[i]f possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property."); *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 212 (S.D.N.Y. 2019). "[O]ne in lawful possession shall not have such possession changed into an unlawful one until he 'be informed of the defect of his title and have an opportunity to deliver the property to the true owner ....'" *Leveraged Leasing Admin. Corp.*, 87 F.3d at 49 (*quoting Employers' Fire Ins. Co. v. Cotton*, 245 N.Y. 102, 106, 156 N.E. 626, 630 (1927)). In addition, "[w]here one is rightfully in possession of property, one's continued custody of the property and refusal to deliver it on demand of the owner until the owner proves his [or her] right to it does not constitute conversion." *Green Complex, Inc. v. Smith*, 107 A.D.3d 846, 849 (2d Dep't 2013) (*quoting Trans-World Trading, Ltd. v. North Shore Univ. Hosp. at Plainview,* 64 A.D.3d 698, 700 (2d Dep't 2009)).

Raj & Raj has failed to adequately plead that it has a possessory right or interest in the personal property and therefore standing to pursue a conversion claim. Raj & Raj makes the following factual allegations in its Amended Complaint:

> 28.    On January 31, 2019 the attorney for a potential purchaser confirmed with the Chapter 7 Trustee there was a substantial amount of restaurant furniture, fixtures and equipment, and inventory at the property. Neither the trustee nor the estate expressed an interest in acquiring title or possession of the personal property.
>
> 29.    Shortly before the chapter 11 was filed, Spencer Appraisal Associates prepared an Appraisal Report cover the

> value of the items then located at 150 Hicksville Road, Bethpage,
> New York.

Am. Compl. ¶¶ 28 and 29.

Neither of the foregoing allegation references Raj & Raj as the owner of the personal property. Raj & Raj then repeats the foregoing allegations in the second count (Accounting), but states that the personal property belongs to Raj & Raj:

> 42.    On January 31, 2019 the attorney for a potential purchaser confirmed with the Chapter 7 Trustee there was a substantial amount of restaurant furniture, fixtures and equipment, and inventory (the "personal property") belonging to [Raj & Raj] located at the property. Neither the chapter 7 trustee nor the estate expressed an interest in acquiring title or possession of the personal property.
>
> 43.    The personal property belonging to [Raj & Raj] at the property had value as itemized by Spencer Appraisal Associates.

Am. Compl. ¶¶ 42 and 43. Raj & Raj does not refer to or attach to the Amended Complaint any documents to support its conclusory claim that it is the rightful owner of the personal property at issue. The only correspondence in the Court's records is the January 31 Letter of Mr. Cavayero to the Trustee seeking to "confirm that neither the Trustee, Debtor's estate or the secured creditor, McCormick 103 LLC have any right[,] title or interest in" the personal property and "confirm that [the Trustee] will give reasonable access to the owner of the [personal property], Bethpage Bistro and Catering LLC … reasonable access to the Debtor's premises for purpose of allowing [it] to inspect the [personal property], and if needed, to make arrangements … for the removal of the same." Motion for Leave to Amend, Ex. P. There is no allegation that the Trustee acknowledged that the statements made in the January 31 Letter accurately reflect any conversation he may have had with Mr. Cavayero and, more importantly, the January 31 Letter clearly identifies Bethpage Bistro as the owner of the personal property, not Raj & Raj. Even if the Trustee and Mr. Cavayero agreed that the

Debtor did not own the personal property, Mr. Cavayero, in no uncertain terms, made clear that his client, Bethpage Bistro, owned it.

Similarly, the Amended Complaint does not reference or attach any appraisal as an exhibit. The only appraisal in the Court's records and in the pleadings filed by the parties is the March 16, 2016 appraisal by Sencer Appraisal Associates which conducted an appraisal for "Bethpage Bistro" Restaurant for a Vivek Singh. Motion for Leave to Amend, Ex. Q; Motion to Dismiss, Ex. T. Even if the Court were to consider the January 31 Letter and the Sencer Appraisal to be integral to the Amended Complaint, both documents belie any claim by Raj & Raj that it is the rightful owner of, and has a possessory interest in, the personal property. In sum, the allegations in the Amended Complaint do not plausibly support the inference that Raj & Raj has a possessory right or interest in the personal property.

Raj & Raj seeks to remedy the references to Bethpage Bistro as owner of the personal property in the January 31 Letter and the Appraisal by asserting, for the first time in its opposition to the Motion to Dismiss, new theories and additional facts regarding the chain of custody of the personal property. In doing so, Raj & Raj attaches to its opposition brief the Cavayero Affidavit whereby Mr. Cavayero states that it was not his intention to assert that Bethpage Bistro was the owner of the restaurant furniture, fixtures and equipment, and inventory at the Property. This change of heart by Mr. Cavayero contradicts representations he previously made to this Court and the Trustee in the Forfeiture Motion and also comes after the January 31 Letter was submitted to this Court as an exhibit in support of Raj & Raj's Motion for Leave to Amend and as an exhibit in another related adversary proceeding before this Court.[16] In none of the instances did Mr. Cavayero backtrack from the unequivocal statements made in the January 31 Letter that his client Bethpage Bistro owned the personal

---

[16] *Merchant Acquisitions, Inc. v. Difficile Realty Corp.*, Adv. Pro. No. 8-20-08057-las.

property in question. And it yet again bears repeating that Mr. Cavayero not only represented Bethpage Bistro in the Debtor's bankruptcy case, but he also represented Rajeswary (Harendra's mother) and VMC the initial successful bidder at the auction, as well representing Ruby in her individual chapter 7 bankruptcy case.

With that contradiction noted, the Court now addresses the inclusion by Raj & Raj of additional facts and theories in its opposition brief that were not set forth in the Amended Complaint. The Court will not consider new facts or theories raised for the first time in Raj & Raj's opposition to Difficile's motion to dismiss as these claims are not properly before the Court. Simply stated, a plaintiff may not amend its pleading through an opposition brief. "It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (*quoting K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)); *see also Wright*, 152 F.3d at 178 (rejecting argument raised for first time in opposition to a motion to dismiss the complaint); *Thomas v. City of New York*, No. 12-CV-5061, 2013 WL 3810217 at *3 (E.D.N.Y. July 23, 2013). The Court, therefore, limits its consideration to the facts alleged by Raj & Raj in the Amended Complaint, exhibits attached to the Amended Complaint (of which there are none) and documents external to the Amended Complaint that may properly be considered by the Court when ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). *See DiFolco*, 622 F.3d at 111; *Kramer*, 937 F. 2d at 774. Accordingly, for purposes of ruling on the Motion to Dismiss, the Court has not considered the additional factual allegations and new theories asserted in Raj & Raj's opposition brief. *Peacock*, 100 F. Supp. 3d at 231.

With that said, having failed to adequately plead a possessory interest in the personal property, an essential element of a claim for conversion, count four of the Amended Complaint must be dismissed.

CONCLUSION

For the reasons stated above, the Court grants defendant's motion to dismiss. The Amended Complaint is dismissed in its entirety. The Court retains jurisdiction over defendant's pending sanctions motion. [Dkt. No. 49]. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).

SO ORDERED.



**Dated: May 17, 2021**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**